# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - DETROIT

IN THE MATTER OF:

Offshore Spars Co., et al.[1]

Debtors.

Case No. 23-44657
Judge Thomas J. Tucker
Chapter 11
Jointly Administered

## FINAL ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

This case is before the Court on the First Day Motion for Entry of an Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection (Docket # 11, the "Motion"),[2] filed by Offshore Spars Co. (the "Debtor"). Based on the record in this case, including the interim order entered on May 26, 2023 (Docket # 28), to which no timely objection was filed, and the stipulation filed on June 12, 2023 (Docket # 64), the Court finds good cause to enter this Order.

THE COURT FINDS:

A. On May 23, 2023, (the "Petition Date"), the Debtor filed for relief under Chapter 11 of the United States Bankruptcy code (the "Bankruptcy Code").

B. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

---

[1] The Debtors in these jointly administered cases are Offshore Spars Co. (Case No. 23-44657) and Eric G. Graczyk (Case No. 23-44658).

[2] Capitalized terms used but not defined herein have the meanings as set forth in the Motion.

C. The Court's consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(K), and 157(b)(2)(M).

D. The Debtor is indebted to Pathward NA ("Lender" or "Pathward") under a certain Promissory Notes executed by Debtor to the order of Lender on January 26, 2022 for $1,750,000 and on September 20, 2022 for $350,000 (the "Prepetition Notes") respectively and that, without limitation, the indebtedness under the Prepetition Notes as of the Petition Date includes a total of principal due of $1,603,972.84 and $349,191.00 plus accrued and accruing interest, costs, fees and expenses.

E. The liabilities evidenced by the Prepetition Notes and the other loan and collateral documents, including interest, costs, fees and expenses, are identified as the "Prepetition Indebtedness."

F. The documents, instruments and agreements executed in connection with the prepetition financing arrangements from Lender to Debtor are identified collectively as the "Prepetition Loan Documents." Capitalized terms not defined in this Order or Motion have the meanings set forth in the Prepetition Loan Documents. The Prepetition Indebtedness is secured by all assets of Debtor whether now owned or later acquired, including without limitation: (a) all equipment; (b) all accounts receivable; (c) all inventory; (d) any and all monies,

reserves, deposits, deposit accounts, securities, cash, cash equivalents, balances, credits, and interest and dividends on any of the above, of or in the name of Debtor, now or hereafter with Pathward or any financial institution, and any and all other property of any kind and description of or in the name of Debtor, now or hereafter, for any reason or purpose whatsoever, in the possession or control of, or in transit to, Pathward or any agent or bailee for Pathward; (e) all chattel paper, whether tangible or electronic chattel paper, contract rights, letter of credit rights, and instruments including without limitation, all supporting obligations of the foregoing; all general intangibles; (f) all investment property; (g) all furniture and fixtures; all documents of title; and receipts; whether negotiable or non-negotiable; (h) including all goods covered by such documents; (i) all books, records and computer records in any way relating to the above property; and (j) any and all substitutions, renewals, improvements, replacements, additions and proceeds of the collateral described including all proceeds of insurance policies, but only the collateral specifically set forth in the Security Agreements (as defined below) (collectively, the "Prepetition Collateral"), all as more particularly described in the Security Agreements executed by Debtor in favor of Lender dated January 26, 2022 and September 20, 2022 respectively (the "Security Agreements").

G. Lender's security interest in the Prepetition Collateral is valid and first in priority and the Prepetition Indebtedness is a valid and binding obligation of Debtor.

H. The procedures set forth in this Order, constitute sufficient "notice and hearing" under Section 102 and 363(c) of the Bankruptcy Code, Bankruptcy Rule 2002, 4001, 6004 and 9006. The Debtor requires funds to pay expenses in connection with maintaining operations, including paying employees, continuing production of current products, and providing service to its customers. Failure to pay these and similar critical expenses would cause the Debtor immediate and irreparable harm by disrupting its ability to maintain operations.

I. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

IT IS ORDERED that:

1. The Motion is granted.

2. The Debtor is authorized to use Cash Collateral and grant adequate protection in accordance with the terms of the Motion.

3. To the extent of any diminution in value of the pre-petition Cash Collateral, Pathward is granted the following Replacement Liens as adequate protection. The Replacement Liens will be liens on the Debtor's assets which are created, acquired, or arise after Petition Date, but limited to only those types and

descriptions of collateral in which Pathward held a pre-petition lien or security interest. The Replacement Liens will have the same priority and validity as the pre-petition security interest and liens. No liens are being granted on any Chapter 5 causes of action or the proceeds from such causes of action.

4. As additional adequate protection of Pathward's interests under §§ 361, 362, 363(e) of the Bankruptcy Code, the Debtor will pay, or cause to be paid, to Pathward $10,000.00 per month. The first payment will be due on or before June 20, 2023 with subsequent monthly payments due on the 20th day of each subsequent month.

5. It will constitute a default under this Order if the aggregate value of the Debtor's cash on hand, inventory and collectible accounts receivable fall below 85 percent of $221,185.89 ($188,080.00) or in the event if more than 25 percent of Debtor's collectable accounts receivable exceed 90 days past due calculated from the date of the first invoice Debtor issued to a customer.

6. The security interest and lien granted to Lender under this Order will be evidenced by the entry of this Order, and except as otherwise provided herein, will be deemed to be first, valid and perfected as against all third parties to the same extent, validity and priority as existed on the Petition Date upon entry of this Order, without regard to applicable federal, state or local filing and recording statutes, as of the Petition Date, provided, however, that Lender may take such

steps as it deems appropriate to comply with such recording statutes and Debtor must execute and deliver such additional documents and must take any and all additional action to comply with such recording statutes as Lender may request. At Lender's discretion, it may attach this Order to financing statements bearing Debtor's name as the debtor and file them with any state or local office to further evidence the liens granted hereby without the signature of Debtor.

7. Subject to 11 U.S.C. § 506, Lender's secured claim will include all reasonable fees and out-of-pocket disbursements incurred by Lender, in any way arising from or in connection with this Order, the Prepetition Loan Documents or the Prepetition Indebtedness, including, without limitation, the reasonable fees of counsel for Lender for the preparation, examination and approval of this Order, for the payment of all fees and out-of-pocket disbursements incurred by Lender, including reasonable attorney fees and consulting fees incurred by Lender, in any way arising from or in connection with any action taken by Lender to monitor, advise, enforce or collect the Prepetition Indebtedness, or enforce any obligations of Debtor under this Order, the Prepetition Loan Documents or any other document or agreement arising from or relating to the business relationship between Lender and Debtor, including any actions to lift the automatic stay or otherwise in any way participate in this bankruptcy proceeding.

8. In the event that Debtor does not cure a Default under this Order or under the Prepetition Loan Documents (excluding existing defaults under the Prepetition Loan Documents of which the Lender has been notified in writing), or upon the entry of an order dismissing this case, appointing a liquidating trustee in this case, converting this case to a case under Chapter 7 of the Bankruptcy Code, or transferring the venue of this case to another district, Debtor's right to use Cash Collateral under this Order and the Prepetition Loan Documents will terminate, Debtor must segregate and account for all Cash Collateral then in its possession or control, and Lender will have the right to apply for relief from the stay under § 362 of the Bankruptcy Code. In the event that the Debtor defaults under this Order (a "Default"), Lender may provide written notice to the Debtor in care of its counsel, via email, and provide the Debtor seven (7) days to cure the same.

9. The provisions of this Order, which will be immediately effective upon entry, and any actions taken under this Order, will survive entry of, and will govern with respect to, any conflict with any order previously entered, and the terms and provisions of this Order, as well as the liens and security interests under the Prepetition Loan Documents, this Order, and all rights of Lender and obligations of Debtor created or arising under this Order, will continue in these proceedings or any superseding proceedings under the Bankruptcy Code, and such

liens and security interests will maintain the same extent, validity and priority as existed on the Petition Date until satisfied and discharged.

10. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other court, such stay, modification or vacation will not affect: (a) the validity of any adequate protection granted to Lender under this Order; (b) the validity and enforceability of any lien or priority authorized for the benefit of Lender; or (c) the conduct of Lender with respect to the rights granted to Lender in this Order prior to the effective date of such stay, modification or vacation, and notwithstanding such stay, modification or vacation, such adequate protection, liens and rights will be governed in all respects by the original provisions of this Order and Lender will be entitled to all those rights, privileges and benefits.

11. Other than as to the liens and interests of Pathward, nothing in this Order constitutes an admission by the Debtor or prejudices the rights of the Debtor to challenge the amount, validity, enforceability, priority or perfection of any liens or security interests asserted by any other party asserting a security interest in Debtor's assets.

12. The Debtor is authorized to establish an escrow for Professional Fees. The Debtor may fund the Professional Fee escrow as set forth in the Budget. The funds so escrowed remain property of the estate, and are not subject to any liens, or

other claims of interest by estate Professionals. The Debtor may only pay its Professionals and the Subchapter V Trustee upon further order of the Court.

13. The Debtor's use of Cash Collateral must conform to the amounts set forth in the Budget with a ten percent (10%) variance. It may file with the Court modified or supplemental budgets from time to time and will be authorized to use Cash Collateral in accordance with such modified or supplemental budgets without a hearing unless an objection is filed within fourteen (14) days after such modified or supplemental budgets are filed. The Debtor's authority to use Cash Collateral will continue otherwise ordered by this Court.

14. This Court retains jurisdiction to enforce and interpret this Order.

**Signed on June 12, 2023**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**