**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**IN THE MATTER OF:**

Offshore Spars Co., et al.[1]

                 Debtors.

Case No. 23-44657
Judge Thomas J. Tucker
Chapter 11
Jointly Administered

**1ST AMENDED COMBINED PLAN OF LIQUIDATION OF
OFFSHORE SPARS CO. AND REORGANIZATION OF ERIC R.
<u>GRACZYK</u>**

PREPARED BY:

Stevenson & Bullock, P.L.C.
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com

---

[1]       The Debtors in these jointly administered cases are Offshore Spars Co. (Case No. 23-44657) and Eric R. Graczyk (Case No. 23-44658).

## INTRODUCTION

The Debtors propose this Plan for the resolution of outstanding claims against and interest in the Debtors pursuant to the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have meanings ascribed to such terms in Article 1.2 hereof. The Debtors are the proponents of the Plan under Bankruptcy Code sections 1189(a) and 1129.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

1.1 **Scope of Definitions; Rules of Construction:** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules (as defined below) shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine. For purposes of the Plan, the following terms shall have the meaning set forth below, unless the context requires otherwise.

1.2 **Definitions:**

1.2.1 "<u>Administrative Claim</u>" means Allowed Claims for costs and expenses of administration of this Chapter 11 case allowed under §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2.2 "<u>Administrative Creditor</u>" means a holder of an Administrative Claim.

1.2.3 "<u>Allowed Claim</u>" or "<u>Allowed Interest</u>" means any Claim for which a proof of claim has been filed prior to the Bar Date or that is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely filed; or any claim as to which an objection has been resolved by a Final Order of the Court establishing the priority and amount of such claim.

1.2.4 "<u>Article</u>" refers to a specific article of this Plan.

1.2.5 "<u>Avoidance Actions</u>" means Causes of Action of Graczyk, the Estate of the Reorganized Debtor arising under Chapter 5 and any related sections of the Bankruptcy Code, including without limitation, §§ 502, 510, 541, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Cause of Action.

1.2.6 "<u>Ballot</u>" means the official bankruptcy form no. 314 adopted for these Cases or a document prepared to substantially conform to same which was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.7 "<u>Bankruptcy Code</u>" or "<u>Code</u>" means the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §§101, *et seq.*).

1.2.8 "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction to hear appeals therefrom.

1.2.9 "<u>Bankruptcy Rules</u>" or "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.2.10 "<u>Bar Date</u>" means the date established by the Bankruptcy Court for the filing of any Claims.

1.2.11 "<u>Business Day</u>" means any day, other than a Saturday, Sunday or Legal Holiday, as that term is defined in Bankruptcy Rule 9006(a).

1.2.12 "<u>Buyer</u>" means Offshore Acquisition, LLC, a Michigan limited liability company.

1.2.13 "<u>Cases</u>" means the Debtors' bankruptcy cases currently pending before the Bankruptcy Court entitled *In re Offshore Spars Co.*, Case No. 23-44657 and *In re Eric R. Graczyk*, Case No. 23-44658, and which are jointly administered.

1.2.14 "<u>Causes of Action</u>" means all Claims, rights and causes of action belonging to the Debtors and upon confirmation, the Liquidating Debtor and Reorganized Debtor, including without limitation, Avoidance Actions and any related Claims and actions arising under such sections of the Bankruptcy Code by operation of law or otherwise; any Claims or Causes of Action against any third parties and any and all proceeds of the foregoing.

1.2.15 "<u>Claim</u>" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.16 "<u>Claimant</u>" means any individual or entity which has a valid Claim as defined herein.

1.2.17 "<u>Class</u>" means a class of holders of Claims or Interests described in Article IV of this Plan.

1.2.18 "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order.

1.2.19 "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by the Debtors.

1.2.20 "<u>Confirmation Order</u>" means the Order entered confirming this Plan pursuant to §1129 of the Code.

1.2.21 "<u>Contested Claim</u>" or "<u>Contested Interest</u>" means any Claim or Interest as to which the Debtors or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.2.22 "<u>Creditor</u>" means any holder of a Claim against the Debtors.

1.2.23 "<u>Debtors</u>" mean, collectively, Eric R. Graczyk and Offshore.

1.2.24 "<u>Debtors-In-Possession</u>" means the Debtors in their capacity as

debtors-in-possession as term as defined in the Bankruptcy Code in the Cases.

1.2.25 "Disallowed" means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in the Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in the Debtor's Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.26 "Distribution Date" means the date that is fourteen (14) days after the Effective Date.

1.2.27 "Effective Date" means the date that is one (1) day after the Confirmation Order becomes a Final Order.

1.2.28 "Estates" means the bankruptcy estates of the Debtors created pursuant to § 541 of the Bankruptcy Code.

1.2.29 "Final Order" means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed; or (iii) an appeal has been timely taken but such order has not been stayed within fourteen (14) days after the filing of such appeal.

1.2.30 "Governmental Unit" has the meaning ascribed to it in § 101(27) of the Bankruptcy Code.

1.2.31 "Holder" means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.32 "Impaired" means a Claim treated under this Plan, unless the Plan:

A.      leaves unaltered the legal, equitable, and contractual rights to

which such Claim or Interest entitles the holder of such Claim or Interest; or notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default;

B.      cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtors; (ii) the solvency or financial condition of the Debtors; or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

C.      reinstates the maturity of such Claim or Interest as such maturity existed before such default;

D.      compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

E.      does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.2.33 "Insider" means a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the Debtors or a corporation or entity in which an Insider of the Debtors is an Insider.

1.2.34 "Interest" means an equity interest in the Debtors as defined in § 101(16) of the Code.

1.2.35 "Interest Rate" means (a) with respect to Claims entitled to interest under § 506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest evidenced by a writing signed by an executive officer of the Debtors the lowest rate of interest provided in such contract, without regard to any default by Debtors, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, the applicable statutory rate for such Claims or, if no statutory rate exists, 1.0% per year, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.36 "Lien" means any security interest, lien, tax lien, mortgage, encumbrance, common law or statutory lien, charge against, or an interest in property to secure payment of a debt or performance of an obligation. "Lien" shall

be defined as, and interpreted in, as broad a manner as possible.

1.2.37 "Offshore" means Offshore Spars Co.

1.2.38 "Offshore Assets" means those assets being sold by Offshore to Buyer pursuant to the Sale Order.

1.2.39 "Petition Date" means May 23, 2023, the date that the Debtors filed their Chapter 11 voluntary petitions, which commenced the Cases.

1.2.40 "Person" has the meaning given to it under § 101(41) of the Bankruptcy Code.

1.2.41 "Plan" means this Plan, as it may be altered, amended or modified from time to time.

1.2.42 "Priority Claim" means a Claim under or entitled to priority under any of the following sections of the Code: §§ 507(a)(4), 507(a)(5), or 507(a)(8).

1.2.43 "Pro Rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class, unless the Plan expressly provides otherwise.

1.2.44 "Professional Fees" means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.2.45 "Proponents" means the Debtors, the proponents of this Plan.

1.2.46 "Sale Motion" means the Motion for Entry of an Order (I) Approving the Sale of Assets to Offshore Acquisition, LLC Free and Clear of Liens, Claims and Encumbrances, (II) Approving the Asset Purchase Agreement, (III) Terminating Asset Purchase Agreement with Rigpro, LLC (IV), Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale; and (V) Granting Related Relief filed at Docket No. 128.

1.2.47 "Sale Order" means a Final Order authorizing the sale contemplated in the Sale Motion.

1.2.48 "Sale Proceeds" means the proceeds received by Offshore pursuant to the Sale Order.

1.2.49 "Section" refers to a specific section or subsection of this Plan, unless otherwise set forth herein.

1.2.50 "Secured Claim" means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.2.51 "Unimpaired" or "Unimpaired Claim" means a Claim treated under this Plan that leaves unaltered the legal, equitable, and contractual rights of such Claim and is not Impaired.

1.2.52 "Unsecured Claim" means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.3 **Rules of Interpretation**: For purposes of the Plan:

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented.

1.3.3 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.5 The rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4 **Computation of Time**: In computing any period of time prescribed or

allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern. If the Effective Date or any other date on which a transaction or distribution may occur under the Plan occurs on a day that is not a Business Day, the transactions or distributions contemplated by the Plan to occur on such day shall instead occur on the next business day following such non-business day.

1.5 **Governing Law**: Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.6 **Exhibits**: All exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court website for a fee at http://ecf.mieb.uscourts.gov. The exhibits may also be requested, in writing, from the Debtor's counsel. All exhibits may be revised prior to the Confirmation Date by the filing of the revised exhibits with the Bankruptcy Court, so long as the revised exhibits are substantially in conformance with the terms of this Plan. The exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the exhibits.

1.7 **Estimates of Claims**: Unless expressly stated otherwise, nothing herein shall be deemed an admission by the Debtors or to otherwise prejudice the Debtors in any claim's objection or Cause of Action. All estimates of Causes of Action and claims amounts listed in this Plan are current estimates only. All claims amounts and classifications remain subject to the Claims objection process as forth herein.

**ARTICLE II**
**BRIEF BACKGROUND**

This section provides a brief overview and history of the Debtors' business operations and summarizes the events leading up to the filing of the Cases and certain key events in the Cases. Creditors and other parties in interest may disagree with statements contained in this Article; however, it is for informational purposes only and shall not be deemed accurate or have preclusive effect in any future proceeding.

## 2.1 **History of the Debtors**:

Offshore was established in 1976 and its primary business is designing and manufacturing carbon fiber and composite masts and booms for the global superyacht market. Offshore has additional lines of business including replacement and service of standing and running rigging for yachts, e-commerce, and carbon fiber manufacturing for other industries, including the aerospace and automotive industries.

In January 2022, Offshore was acquired by Graczyk Holdings, LLC, a Michigan limited liability company whose sole member is Mr. Eric Graczyk. Not until after the purchase of Offshore did Mr. Graczyk discover numerous financial improprieties, breaches of warranties, and general mismanagement that had befallen the Debtor under previous ownership. Though Mr. Graczyk spent considerable time and effort prior the Petition Date attempting to remedy such matters, a reorganization of the business through a Subchapter V bankruptcy became necessary.

Mr. Graczyk is an individual and is the member of the Debtor's sole member. He serves as the President of Offshore.

During the pendency of the Cases, Offshore received an offer from the Buyer to purchase the Offshore Assets for two million four hundred thirty thousand ($2,430,000.00) dollars. Offshore then filed the Sale Motion in which Offshore sought approval of the asset purchase agreement and the authority to sell the Offshore Assets. The Sale Motion remains pending as of the date of the filing of this Plan. It is anticipated that upon the closing of the Sale, Graczyk will execute an Employment Agreement with Buyer and receive a salary of one hundred fifty thousand ($150,000.00) dollars per annum to serve as President of Buyer for no less than three (3) years.

## 2.2 **Liquidation Analysis**:

The Debtors' Liquidation Analyses are attached to this Plan as Exhibits A1 and A2. The Debtors believe that under the Plan, creditors will receive not less than they would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

All values contained in the Liquidation Analyses are based on good faith estimates using information currently available to the Debtors. The estimates contained therein have not been subject to audit and the Debtors' assets have not

been formally appraised for purposes of the Liquidation Analyses. The estimates shall in no way be construed to constitute binding guaranties, representations, or warranties and are subject to revision at any time.

The values for the Debtors' assets are based upon reasonable estimates of the values as carried on the Debtors' books and records. In establishing the values, the Debtors have considered the size, age, physical condition, and location of the assets.

It is also noteworthy that upon a liquidation of the Debtors' assets, there may be significant penalties and adjustments. The amounts contained in the Liquidation Analysis are conservative estimates, but the adjustments may be much higher

### 2.3 **Post-Confirmation Financial Projections**:

Graczyk has attached as Exhibit B a summary of post-confirmation financial projections for the time 1st Quarter of 2024 through 4th Quarter 2026.

Given that Offshore is liquidating through this Plan and the Sale Motion, no post-confirmation financial projections are provided for Offshore with this Plan.

### 2.4 **Ballot**:

The ballot to accept or reject this Plan is attached hereto as Exhibit C. Pursuant to the Court's *Order Deeming the Debtors' Plan Withdrawn, Granting Leave and Setting a Deadline for the Debtors to File an Amended Plan, Establishing Deadlines and Procedures for Debtors' Amended Plan, and Cancelling November 8, 2023 Confirmation Hearing*, the deadline to return ballots is December 18, 2023.

## ARTICLE III
## ADMINISTRATIVE AND PRIORITY CLAIMS

Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

### 3.1 **GROUP I**:

3.1.1 The claims of Group I shall consist of all Administrative Claims, including any taxes that qualify as Administrative Claims. The Allowed Claims of this Group shall be paid the full amount of their Claims on such date as may be

mutually agreed upon between the Debtors and the particular claimant, or, if no such date is agreed upon, the later of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtors and such Administrative Creditor, or (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving the Debtors' payment of such expenses. All Professional Fees that are the subject of pending fee applications before the Bankruptcy Court, or that have already been allowed by the Bankruptcy Court but which remain unpaid as of the Effective Date, unless otherwise agreed by such professionals, shall be paid in full, in cash, (i) on the Sale Closing Date, or (ii) within seven (7) days after a Final Order of the Bankruptcy Court has been entered authorizing their payment, whichever is later.

       3.1.2  The Bar Date for asserting any Administrative Claim is fourteen (14) days after the Confirmation Date. Any Administrative Claim first asserted after the date that is fourteen (14) days after the Confirmation Date shall be deemed Disallowed and shall not be entitled any payment under this Plan. The objection procedures in Article IX of this Plan are applicable to any filed Administrative Claim.

       3.2 **GROUP II**:

       3.2.1  The Claims of Group II shall consist of all Allowed Claims, if any, that are entitled to Priority under § 507(a)(8) of the Code.

       3.2.2  Any payments made to Allowed Claims of Group II shall first be applied to the trust fund portion of taxes, including any trust fund recovery penalties.

       3.2.3  Creditors with claims that are entitled to Priority under § 507(a)(8) will be paid in full on the Distribution Date.

       3.2.4  The Debtors shall have the right to challenge any Priority Claim through the claims objection process set forth in Article X, which challenge may include but is not limited to a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtors' personal property that may or may not have been made by the respective taxing authority.

       3.2.5  To the extent that an objection is filed, the Debtors shall not be obligated to pay any Allowed Priority Claim until a determination of the amount of

the Priority Claim has been made by the Bankruptcy Court. Payments to these Priority Claims that are ultimately allowed shall commence on the first business day of the calendar quarter following the Court's final determination of the allowability of all of the Claims in this Class.

3.2.6 Until such time as the Priority Claim has been fully and indefeasibly paid, the Priority Claimant shall retain any and all Liens that it may have which shall remain in full force and effect, with the same Priority and to the same extent that existed on the Petition Date. Upon payment in full of the Priority Claim, the Priority Claimant shall release and extinguish all Liens and execute any and all documents reasonably requested by the Debtors to memorialize same.

3.2.7 Provided that the Debtors are making all payments required under the Plan, any taxing authority shall not pursue any further collection efforts, including the issuance of levies, seizure of assets, imposition of trust fund recovery penalties and assessments and filing of Liens against any party who may also be liable to pay or satisfy Tax Claims. If Claimants of this Group seize assets or collect funds from any non-debtor party, the Debtors may reduce their payments under the Plan, in their discretion, by the amount of funds seized.

## ARTICLE IV
## DESIGNATION AND TREATMENT OF CLASSES
## OF CLAIMS AND INTERESTS

This Plan divides Claims and Interests into classes and treats them as follows:

4.1     **Class I**: This class shall receive payments and treats the Allowed Secured Claim of Pathward, N.A. ("Pathward").  Pathward shall possess an Allowed Secured Claim in the amount of one million nine hundred fifty-three thousand one hundred sixty-three & 84/100 ($1,953,163.84) dollars or such lesser amount as is owed to Pathward as of the Confirmation Date and which is secured against certain of the Offshore Assets to the extent as set forth in their security instruments and UCC-1 financing statement filed with the State of Michigan Department of State bearing filing numbers 20220118000629-3 and 20220901000634-7 (the "Pathward Claim").  The Pathward Claim shall be paid in full on the Distribution Date.

**This Class is Impaired.**

4.2     **Class II**:  This Class shall receive payments and treats the Allowed Secured Claim of Ford Motor Credit Company, LLC ("Ford").  Ford shall retain its

Allowed Secured Claim in the amount of $59,000.00 or such lesser amount as of the Confirmation Date against the 2022 Ford Explorer (VIN 1FM5K8GC1NGC20904) (the "Explorer"). Although a portion of Ford's Claim may be unsecured, it will not have an unsecured deficiency claim. No other creditor has a Secured Claim against the 2022 Ford Explorer. Ford's claim has continued to be paid prior to and since the Petition Date, and the claim is current and not delinquent in any manner. Ford's Allowed Secured Claim shall be paid on or before the Distribution Date from the Sale Proceeds at which time its claim shall be fully paid and any lien in the Explorer discharged.

**This Class is Unimpaired.**

4.3 **Class III**: This Class shall receive payments and treats the Allowed Secured Claim of United Wholesale Mortgage ("UWM"). UWM shall retain its Allowed Secured Claim in the amount of $390,000.00 or such lesser amount as of the Confirmation Date against the real property commonly known as 4170 Nearbrook Road, Bloomfield Hills, MI 48302. UWM's claim has continued to be paid prior to and since the Petition Date, and the claim is current and not delinquent in any manner. Graczyk shall continue to pay, or cause to be paid, UWM throughout the term of the Plan the monthly amounts due and owing when due and owing.

**This Class is Unimpaired.**

4.4 **Class IV**: This Class shall receive payments and treats the Allowed Secured Claim of Flagstar Bank ("Flagstar"). Flagstar shall retain its Allowed Secured Claim in the amount of $75,876.00 or such lesser amount as of the Confirmation Date against the real property commonly known as 4170 Nearbrook Road, Bloomfield Hills, MI 48302. Flagstar's claim has continued to be paid prior to and since the Petition Date, and the claim is current and not delinquent in any manner. Graczyk shall continue to pay, or cause to be paid, Flagstar throughout the term of the Plan the monthly amounts due and owing when due and owing.

**This Class is Unimpaired.**

4.5 **Class V**: This Class shall receive payments and treats the Claim of Chesterfield 5, LLC ("Chesterfield"). The Liquidating Debtor shall pay cure costs of twenty-seven thousand five hundred & 00/100 ($27,500.00) dollars to Chesterfield pursuant to the lease of the real property located at 50200 E. Russell Schmidt Blvd., Chesterfield, MI 48051 (the "Lease") as well as the post-petition property taxes totaling twenty-seven thousand twenty-seven & 63/100 ($27,027.63)

dollars on the Distribution Date. The Lease is otherwise being treated pursuant to the Sale Motion.

**This Class is Impaired.**

4.6     **Class VI**: This Class shall not receive payments and treats the Claim of Cimolai USA, LLC ("Cimolai"). Cimolai asserts that (a) it is the holder of a secured claim; (b) its claim is subject to the Michigan Builder's Trust Fund Act, MCL § 570.151; and (c) it is owed $76,088.00. Cimolai will not receive payments under this Class and, instead, will be paid as the Holder of a Class VII holder of an Allowed Unsecured Claim in the amount of $76,088.00.

**This Class is Impaired.**

4.7     **Class VII**: This Class consists of the Holders of Allowed Unsecured Claims against Offshore. Neither pre-confirmation interest nor post-confirmation interest on Allowed Class VII Claims will be paid. A Creditor in this Class shall receive a pro rata distribution incident to its Allowed Unsecured Claim based on a single payment on the Distribution Date of its pro rata share of no less than forty-five thousand ($45,000.00) dollars from the Sale Proceeds after all Allowed Administrative Claims, Priority Claims, and Classes I, II, and V are paid in full.

**This Class is Impaired.**

4.8     **Class VIII**: This Class consists of the Holders of Allowed Unsecured Claims against Graczyk. Neither pre-confirmation interest nor post-confirmation interest on Allowed Class VIII Claims will be paid. A Creditor in this Class shall receive a pro rata distribution incident to its Allowed Unsecured Claim based on two (2) payments each year on a semi-annual basis of $2,500.00 per payment for three (3) years, for a total of fifteen thousand ($15,000.00) dollars. The first payment shall be due on or before January 31, 2024 and the second payment shall be due on or before July 31, 2024. Such payments shall continue to be made on the same date every January 31 and July 31 until the earlier occurs of (i) the respective Claim is paid in full; or (ii) July 31, 2026.

**This Class is Impaired.**

4.9     **Class IX**: This Class shall consist of the Interests of the Debtors. Holders of the Interests shall retain their interests in the Debtors, Liquidating Debtor, and Reorganized Debtor in the same manner as percentage upon confirmation of the

Plan.

**This Class is Unimpaired.**

# ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

5.1 **The Liquidating Debtor:** On the Effective Date, all of Offshore's rights, titles, and interests in and to all of the Offshore Assets shall revest in the Liquidating Debtor to be operated and distributed by the Liquidating Debtor pursuant to the provisions of this Plan. All of the tangible Offshore Assets will be held in the Stevenson & Bullock, P.L.C. IOLTA Account and will include, *inter alia*, the Sale Proceeds, any receivables, and any cash equivalents not otherwise sold to the Buyer pursuant to the Sale Order. The Liquidating Debtor shall have full responsibility for maintaining and preserving all of the Assets and any other assets or interests of Offshore and Liquidating Debtor until all disbursements are made in accordance with the provisions of the Plan. Upon entry of the Confirmation Order, Stevenson & Bullock, P.L.C. shall be authorized to make such distributions pursuant to this Plan on behalf of the Liquidating Debtor.

5.2 **The Reorganized Debtor**: On the Effective Date, all of Graczyk's rights, titles, and interests in and to all of his property shall revest in the Reorganized Debtor free and clear of any claims or interests, including liens, except as expressly provided in this Plan. Graczyk shall be discharged from his status as "debtor" and his affairs and business shall be thereafter conducted by the Reorganized Debtor without Court supervision, except as may be governed by this Plan. If Graczyk's bankruptcy case is converted to Chapter 7, all property vested in the Reorganized Debtor will revest and become property of the Chapter 7 estate.

5.3 **Professional Fees of the Debtors, Liquidating Debtor, and Reorganized Debtors**: Any services performed or expenses incurred by any professional on behalf of the Debtors, Liquidating Debtor, or Reorganized Debtor with respect to these Cases after the Confirmation Date, shall not be subject to the prior review and approval of the Bankruptcy Court and, notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Fed. R. Bankr. P. 2016, after the Confirmation Date, no professional shall be required to disclose payments from the Debtors, Liquidating Debtor, or Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Liquidating Debtor or Reorganized Debtor as the case may be.

5.4 **Change of Address**: In order to ensure that it receives its distribution, each Creditor must advise the Liquidating Debtor and Reorganized Debtor of any change in address. Absent any such notification, the Liquidating Debtor and/or Reorganized Debtor will send payments to the address listed on the Matrices on file with the Bankruptcy Court.

5.5 **Litigation**: Unless expressly waived or settled in the Plan or Confirmation Order, all Causes of Action are expressly reserved, whether or not specifically listed in this Plan or the Debtors' bankruptcy schedules filed with the Court, as amended. Upon the Effective Date, all Causes of Action are expressly vested in the Liquidating Debtor or Reorganized Debtor, as the case may be. No preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action as a consequence of the Confirmation, the Effective Date or consummation of the Plan.

## ARTICLE VI
## ACCEPTANCE OF THE PLAN

6.1 **Presumed Acceptance of the Plan**: Classes II, III, IV, and IX are conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

6.2 **Presumed Rejection of the Plan**: No Class is conclusively presumed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.

6.3 **Voting Classes**: Classes I, V, VI, VII, and VIII are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

6.4 **Elimination of Vacant Classes**: Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

6.5 **Cramdown**: The Debtors will request confirmation of the Plan, as it may be modified from time to time, under § 1191 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to § 1191 of the Bankruptcy Code requires modification of the Plan.

## ARTICLE VII
## EXECUTORY CONTRACTS

7.1     **Rejection of Executory Contracts**: The occurrence of the Effective Date shall constitute the rejection, pursuant to § 365(a) of the Bankruptcy Code, of all executory contracts and unexpired leases that have not already been assumed or rejected by the Debtors, that are the subject of a pending motion to assume or reject as of the date the Confirmation Order is entered.

7.2     **Rejection Claims**: Any Creditor who has a Claim as a result of such rejection shall have seven (7) days after the Effective Date or the date by which such rejection is effective pursuant to an order of the Court to file a Proof of Claim.  In the event that such Claim is not timely filed, the Claim shall be Disallowed in its entirety. The filing of this Plan with the Court shall be sufficient notice informing any potential Creditor of this requirement.

## ARTICLE VIII
## MODIFICATION OF THE PLAN

8.1     After confirmation, and before substantial consummation of the Plan, the Debtors may, from time to time, propose amendments or modifications of this Plan without leave of the Court.  After confirmation and substantial consummation of the Plan, the Liquidating Debtor and/or Reorganized Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order or otherwise modify the Plan.

8.2     If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtors proposes a material modification affecting all Creditors, then such modification will be governed by § 1127 of the Bankruptcy Code.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.1     **Discharge of Claims**:

a.     If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Reorganized Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective

Date, to the extent specified in § 1141(d) of the Bankruptcy Code.

b.     If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Reorganized Debtor after the order for relief under this chapter, the Court shall grant the Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Code, and all other debts allowed under section 503 of the Code and provided for in this Plan, except any debt— on which the last payment is due after the first 3 years of the Plan; or if applicable, of the kind specified in section 523(a) of the Code.

9.2     **Injunction**: Except as otherwise provided in the Plan, from and after the Effective Date, all persons who have held, hold, or may hold Claims against the Debtors and their assets are permanently enjoined from taking any of the following actions against the Debtors and their assets: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein precludes such persons or entities from exercising their rights pursuant to and consistent with the terms of this Plan and the Confirmation Order.

9.3     **Setoffs**: Except as otherwise expressly provided for in the Plan, the Liquidating Debtor and Reorganized Debtors pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors, the Liquidating Debtor, or the Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor-in-interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor- in-interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Liquidating

Debtor or Reorganized Debtors of any Claims, rights, setoff rights and Causes of Action that the Liquidating Debtor or Reorganized Debtors may possess against such Holder. Neither the Liquidating Debtor nor the Reorganized Debtors shall be required to make any distributions to the Holder of any Allowed Claim to the extent that the Liquidating Debtor asserts setoff rights against such Holder until after entry of a Final Order resolving such setoff rights. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtors, Liquidating Debtor, or Reorganized Debtors, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to § 553 of the Bankruptcy Code or otherwise.

## ARTICLE X
## OBJECTIONS TO CLAIMS AND INTERESTS

10.1    Parties in interest may, within thirty (30) days after the Effective Date, object to the allowance of any Claims, or request the Bankruptcy Court to timely reconsider the allowance of any Claim previously or hereafter filed.

10.2    Parties in interest may object to any Lien as part of the Claims objection process.

10.3    Parties in interest may file an objection to any Proof of Claim filed in accordance with Section 7.2 on or before the later of (i) thirty (30) days after the filing of the Proof of Claim or (ii) the time set for the filing of objections in Section (including any extensions). The objection will be resolved in accordance with Article X.

## ARTICLE XI
## UNITED STATES TRUSTEE REQUIREMENTS

11.1    The Debtors will continue to remit to the Office of the United States Trustee all appropriate post-confirmation quarterly reports for the relevant time periods.

11.2    After the Cases are closed, to the extent any monthly reports have not been timely provided, the Cases may be re-opened by the Office of the United States Trustee to file such motions or take such action as appropriate to be provided with such reports.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

12.1   Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes until the entry of a final decree closing this case:

A.      To determine all objections to the allowance of Claims;

B.      To approve or disapprove any compromise by the Reorganized Debtor of any Claim;

C.      To determine all disputes arising under the Plan, including satisfaction of payments under the Plan or any dispute over any action taken by the Liquidating Debtor or Reorganized Debtor, and to enforce, interpret and administer the terms and conditions of the Plan;

D.      To determine any applications for allowance of compensation and reimbursement of expenses as may be required for pre- confirmation services;

E.      To determine any applications for rejection, assumption, or assignment of executory contracts and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts pursuant to the Plan;

F.      To determine any applications, adversary proceedings, and contested and litigation matters pending in the case at the Confirmation Date or thereafter filed;

G.      To determine any applications on file for approval of settlement agreements and entering and enforcing all appropriate orders in connection therewith;

H.      To authorize the Liquidating Debtor or Reorganized Debtor to abandon property of the Estate;

I.      To modify any provisions of the Plan pursuant to the Rules, the Code and provisions of the Plan;

J.      To correct any defect, cure any omission, or reconcile any

inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

K. To determine such other matters provided for in the Confirmation Order as may, from time to time, be authorized under the provisions of the Code or any applicable law;

L. To enforce all orders, judgments, injunctions, and rulings in connection with this proceeding; and

M. To enter such orders that may be necessary or appropriate to aid in confirmation and to facilitate implementation of the Plan.

# ARTICLE XIII
# PROVISIONS REGARDING DISTRIBUTIONS

13.1 **Contested Claims**: Notwithstanding anything in this Plan to the contrary, neither the Debtors, the Liquidating Debtor, nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim. Further, neither the Debtors, the Liquidating Debtor, nor the Reorganized Debtor shall be required to make any payments for an Allowed Claim to any Creditor if the Debtors, the Liquidating Debtor, or the Reorganized Debtor have filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter- claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with § 502(d) of the Code, provided, however, that the Liquidating Debtor or Reorganized Debtor shall escrow a sufficient amount to pay such Consisted Claim in full, in the event that it is allowed.

13.2 **Delivery of Distributions**: Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Liquidating Debtor or Reorganized Debtor, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Liquidating Debtor or Reorganized Debtor after the date of any related Proof of Claim or (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims if the Liquidating Debtor or Reorganized Debtor have not received a written notice of a change of address. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the

benefit of the distributions in the manner set forth in the Plan. Neither the Liquidating Debtor nor the Reorganized Debtor shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

13.3 **Allocation of Payments**: All distributions shall be allocated first to principle until the principle amount of the Claim is paid in full, next to interest if interest is allowed in relation to the Claim and finally, to fees, costs and expenses if such are allowed. This section shall not apply to Flagstar.

13.4 **Compliance with Tax Requirements and Allocations**: In connection with the Plan, to the extent applicable, the Liquidating Debtor and Reorganized Debtor shall be authorized to take all actions necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Debtor and Reorganized Debtor reserve the right, in their sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

13.5 **Undeliverable Distributions and Non-Negotiated Checks**: If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Liquidating Debtor and Reorganized Debtor are notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address. If checks issued by the Liquidating Debtor and Reorganized Debtor on account of Claims are not negotiated within ninety (90) days after the issuance of such check, the check shall be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Liquidating Debtor or Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Liquidating Debtor or Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein shall require the Liquidating Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim. This provision does not apply to the Office of the United States

Trustee.

13.6 **Fractional Payments**: Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars. This provision does not apply to the Office of the United States Trustee.

13.7 **Interest and Penalties on Claim**: Unless otherwise specifically provide for in the Plan, the Confirmation Order or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

13.8 **Prepayment**: Any distribution required under this Plan may be prepaid, in whole or in part, in the sole and absolute discretion, of the Liquidating Debtor and Reorganized Debtor.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1 **Authorization**: The Debtors, Liquidating Debtor, and Reorganized Debtor, and all parties-in- interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.

14.2 **Notices**: Any notice required or permitted under this Plan shall be made in writing and served either by (i) certified mail, return receipt requested, postage prepaid; or (ii) overnight delivery service, freight prepaid, addressed to the following:

If to Offshore or the Liquidating Debtor:

> Offshore Spars Co.
> Attn.: Eric R. Graczyk
> 50200 E. Russell Schmidt Blvd.
> New Baltimore, MI 48051

If to Graczyk or the Reorganized Debtor:

> Eric R. Graczyk
> 4170 Nearbrook Road
> Bloomfield Hills, MI 48302

In all instances, with a copy to counsel:

> Stevenson & Bullock, P.L.C.
> Attn.: Elliot G. Crowder
> 26100 American Drive, Suite 500
> Southfield, MI 48034

14.3 **Change of Address**: In the event the holder of any Claim shall transfer such Claim after the Confirmation Date, it shall immediately advise the Liquidating Debtor or Reorganized Debtor in writing of such transfer and the Liquidating Debtor or Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until it shall have received written notice of the transfer. Each transferee of any claim shall take such claim subject to the provisions of the Plan and any requests made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in the notice, the Liquidating Debtor and Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all right and powers of the transferor under the Plan.

14.4 **Post-Confirmation Professional Fees**: Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, no professional shall be required to file a 2016(b) statement for any fees or expenses received after the Confirmation Date. Any services performed or expenses incurred by any professional on behalf of the Debtors with respect to these Cases after the Confirmation Date shall not be subject to the prior review and approval of the Bankruptcy Court. All Professional Fees and expenses shall be billed directly to the Debtors, Liquidating Debtor, or Reorganized Debtor as the case may be.

14.5 **Final Decree**: As soon as possible after distributions the Liquidating Debtor and Reorganized Debtor shall file with the Bankruptcy Court final reports and applications for final decree, and the time for filing such report and application shall be extended to such time. However, this case will remain open until after (a) the Subchapter V Trustee files her final report; and (b) the Court enters an order terminating the Subchapter V Trustee's appointment.

14.6 **Transfer Taxes**: The making and delivery of any instruments of transfer to or from the Debtors pursuant to this Plan, including deeds and articles of transfer shall not be taxed under any law imposing a stamp, as provided in § 1146(c) of the Code.

14.7 **Avoidance Actions**: The Reorganized Debtor shall have the right to commence, continue, amend or compromise all Avoidance Actions, whether or not those causes of action were the subject of a suit as of the Confirmation Date.

14.8 **Binding Effect**: The Plan and the Confirmation Order will be binding upon, and will inure to the benefit of the Debtors, the Liquidating Debtor, the Reorganized Debtor, and the holders of all Claims and Interests and their respective successors and assignees.

14.9 **Severability of Plan Provisions**: After the Effective Date, should any term or provision of this Plan be held by the Bankruptcy Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

14.10 **Notice of Substantial Consummation**: The Liquidating Debtor and Reorganized Debtor shall timely file a Notice of Substantial Consummation in accordance with 11 U.S.C. § 1183(c)(2). To confirm the Notice of Substantial Consummation, the Liquidating Debtor and Reorganized Debtor shall serve the Subchapter V Trustee with copies of all checks distributed in the initial distribution to Classes requested by the Subchapter V Trustee. The Subchapter V Trustee will not file her final report until after receipt and confirmation of the initial distribution checks for any Classes she requests, to her satisfaction.

*[Signatures on following page]*

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
Counsel for Debtors
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email:  ecrowder@sbplclaw.com
Email:  ehassan@sbplclaw.com

**OFFSHORE SPARS CO.**

By: /s/ Eric R. Graczyk
Eric R. Graczyk
Its:     Responsible Person

By: /s/ Eric R. Graczyk
Eric R. Graczyk

Dated: November 17, 2023

**EXHIBIT A1**

## Assets

| Description of Asset | Liquidation Value | Comments |
|---|---|---|
| Cash on hand | $ 200.00 | ** All values disclosed as of Petition Date |
| 5/3 Business Checking Acct. | $ 13,114.55 | |
| Chase Business Checking Acct. | $ 43,030.06 | |
| Paypal Accounts (2) | $ - | |
| Security Deposit held with Chesterfield | $ 10,000.00 | |
| Accounts Receivable | $ 26,841.28 | |
| Inventory and projects in various stages | $ 141,000.00 | |
| Misc. Office furniture | $ 2,000.00 | |
| Picnic tables (2) | $ 100.00 | |
| TVs (6), Monitors (10), Laptops (8), etc. | $ 4,000.00 | |
| Customer sailboat mast trailer (40') | $ 1,500.00 | |
| Customer sailboat mast trailer (20') | $ 500.00 | |
| 2022 Ford Explorer | $ 61,000.00 | |
| Storage Containers (6) | $ 11,000.00 | |
| Bridgeport mills (2), Lathes (2), etc. | $ 11,000.00 | |
| Autoclave Machines (2) | $ 125,000.00 | |
| Paint booths (2) | $ 150,000.00 | |
| Overhead cranes | $ 4,000.00 | |
| Air filtration System, Welding Equpment, etc. | $6,000.00 | |
| Term life insurance | $ - | |
| Pending action against Steven L. King | Unknown | |
| Possible cause of action against Varnum, LLP | Unknown | |
| www.offshorespars.com | Unknown | |
| Total | $ 610,285.89 | |

## Liabilities

| Name of Claimant | Amount of Claim | Comments |
|---|---|---|
| **Secured** | | |
| Pathward, N.A. | $ (1,953,163.84) | Amount owed as reflected on Debtor's Schedule D |
| Ford Motor Credit Company, LLC | $ (61,000.00) | Amount owed as reflected on Debtor's Schedule D |
| **Administrative** | | |
| Stevenson & Bullock, P.L.C. (est.) | $ (100,000.00) | |
| Subchapter V Trustee (est.) | $ (12,000.00) | |
| Mueller & Company, P.C. (est.) | $ (7,500.00) | |
| Ch. 7 Trustee fees (est.) | $ (33,764.25) | |
| Ch. 7 Trustee professional fees (est.) | $ (25,000.00) | |
| **Priority Claims** | | |
| Internal Revenue Service | $ (126,591.24) | Amount owed as reflected on Proof of Claim No. 5 |
| State of CA Franchise Tax Board | $ (1,625.00) | |
| **Distribution of Proceeds of Assets in Event of Liquidation** | | |
| Gross proceeds available | $ 610,285.89 | |
| Less Allowed Secured Claims | $ (2,014,163.84) | |
| Less Administrative Expenses (total) | $ (178,264.25) | |
| Less Priority Claims | $ (126,591.24) | |
| Less Unsecured Claims | $ (2,363,511.28) | Amounts owed as reflected on Debtor's Schedule F |
| Total | $ (4,072,244.72) | |

## Net Proceeds

| | | |
|---|---|---|
| Proceeds available to prepetition unsecured creditors in Ch. 7 | $ | - |
| Pro Rata Distribution available to unsecured creditors in Ch. 7 | 0% | |
| Proceeds available to prepetition unsecured creditors under the Plan | $ | - |
| Pro Rata Distribution available to unsecured creditors under the Plan | 0% | |

**EXHIBIT A2**

## Assets

| Description of Asset | Liquidation Value | Exemption Value | Total Value |
|---|---|---|---|
| 4170 Nearbrook Rd., Bloomfield Hills, MI 48302 | $857,000.00 | $ - | $857,000.00 |
| 2018 Ford Edge | $ 18,000.00 | $ 18,000.00 | $0.00 |
| 2012 Mercedes E350 | $ 12,500.00 | $ - | $12,500.00 |
| Misc. household goods and furnishings | $ 3,500.00 | $ 3,500.00 | $0.00 |
| TVs (3) | $ 500.00 | $ 500.00 | $0.00 |
| Misc. baseball cards | $ 200.00 | $ 200.00 | $0.00 |
| Misc. sports and hobby equipment | $ 400.00 | $ 400.00 | $0.00 |
| Firearms | $ 300.00 | $ 300.00 | $0.00 |
| Misc. clothing | $ 350.00 | $ 350.00 | $0.00 |
| Watch (1) | $ 300.00 | $ 300.00 | $0.00 |
| Cat | $ 10.00 | $ - | $10.00 |
| Checking acct. at JPMorgan Chase | $ 93.94 | $ 93.94 | $0.00 |
| Checking acct. at Flagstar Bank | $ 10.90 | $ 10.90 | $0.00 |
| Checking acct. at US bank | $ 1,678.10 | $ 1,270.16 | $407.94 |
| Savings acct. at Goldman Sachs | $ 16.19 | $ - | $16.19 |
| Graczyk Holdings, LLC | Unknown | $ - | $0.00 |
| IRA with Fidelity Investments | $ 13,700.77 | $ 13,700.77 | $0.00 |
| 401(k) with Fidelity Investments | $ 335,913.06 | $ 335,913.06 | $0.00 |
| IRA with LPL Financial | $7,000.00 | $ 7,000.00 | $0.00 |
| The Eric G. Graczyk Revocable Trust | Unknown | $ - | $0.00 |
| New York Life: Whole Life Policy | $ 1,600.00 | $ 1,600.00 | $0.00 |
| Claims against Varnum LLP and Steven King | Unknown | $ - | $0.00 |
| Misc. tools | $ 500.00 | $ 500.00 | $0.00 |
| | | Total | $869,934.13 |

## Liabilities

| Name of Claimant | Amount of Claim | Comments |
|---|---|---|
| **Secured** | | |
| Pathward, N.A. | $ 1,953,163.84 | Amount owed as reflected on Debtor's Schedule D |
| Flagstar Bank | $ 68,167.33 | Amount owed as reflected on Debtor's Schedule D |
| United Wholesale Mortgage | $ 391,955.23 | Amount owed as reflected on Debtor's Schedule D |
| **Administrative** | | |
| Stevenson & Bullock, P.L.C. (est.) | $ (100,000.00) | |
| Subchapter V Trustee (est.) | $ (12,000.00) | |
| Mueller & Company, P.C. | $ (7,500.00) | |
| Ch. 7 Trustee fees (est.) | $ (10,957.50) | |
| Ch. 7 Trustee professional fees (est.) | $ (15,000.00) | |
| **Priority Claims** | | |
| Internal Revenue Service | $ (2,300.00) | |

| Distribution of Proceeds of Assets in Event of Liquidation | | |
|---|---|---|
| Gross proceeds available | $869,934.13 | |
| Less Allowed Secured Claims | $ (2,413,286.40) | |
| Less Administrative Expenses (total) | $ (145,457.50) | |
| Less Priority Claims | $ (2,300.00) | |
| Less Unsecured Claims | $ (1,488,348.54) | Amounts owed as reflected on Debtor's Schedule F |
| Total | $ (3,179,458.31) | |

## Net Proceeds

| | | |
|---|---|---|
| Proceeds available to prepetition unsecured creditors in Ch. 7 | $ | - |
| Pro Rata Distribution available to unsecured creditors in Ch. 7 | 0% | |
| | | |
| Proceeds available to prepetition unsecured creditors under the Plan | $ | - |
| Pro Rata Distribution available to unsecured creditors under the Plan | 0% | |

**EXHIBIT B**

# Exhibit B

| | 2024 | 2025 | 2026 |
|---|---|---|---|
| **Income** | | | |
| | | | |
| Employment | 150,000 | 150,000 | 150,000 |
| Health Insurance Reimbursement | 2,400 | 2,400 | 2,400 |
| **Total Income** | **152,400** | **152,400** | **152,400** |
| | | | |
| **Expense** | | | |
| Tax, Medicure and Social Security Deductions | 47,280 | 47,280 | 47,280 |
| Health Insurance | 5,244 | 5,506 | 5,781 |
| Doctors Co Pays / Medications / Personal Care | 3,300 | 3,465 | 3,638 |
| Home Mortgage (Primary) | 21,539 | 21,539 | 21,539 |
| Home Mortgage (HELOC) | 11,148 | 11,148 | 11,148 |
| Simple IRA Contributions | 3,500 | 3,500 | 3,500 |
| Real Estate Taxes | 12,120 | 12,362 | 12,610 |
| HOA Dues | 300 | 325 | 350 |
| Utilities (Electric, Natural Gas, Water&Sewer, Garbage, Internet, Cable) | 9,772 | 10,261 | 10,774 |
| Home Maintenance (Lawn, Snow and Repairs) | 2,700 | 2,900 | 3,045 |
| Groceries / Housekeeping Supplies | 5,400 | 5,670 | 5,954 |
| Entertainment | 1,500 | 1,700 | 1,900 |
| Transportation | 6,240 | 6,427 | 6,620 |
| Life Insurance Premium | 2,270 | 2,270 | 2,270 |
| Clothing, Laundry and Dry Cleaning | 2,500 | 2,515 | 2,530 |
| Home Insurance, Vehicle Insurance and Umbrella | 6,298 | 6,613 | 6,944 |
| Pet Supplies / Vet | 1,300 | 1,350 | 1,400 |
| **Total Operating Costs** | 142,411 | 144,831 | 147,282 |
| **Net Annual Income** | **9,989** | **7,569** | **5,118** |
| | | | |
| **Class VIII** | 5,000 | 5,000 | 5,000 |

## **EXHIBIT C**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Offshore Spars Co., et al.[1]

                    Debtors.

Case No. 23-44657
Judge Thomas J. Tucker
Chapter 11
Jointly Administered

## BALLOT FOR ACCEPTANCE OR REJECTION OF THE 1ST AMENDED COMBINED PLAN OF LIQUIDATION OF OFFSHORE SPARS CO. AND REORGANIZATION OF ERIC R. GRACZYK

The Debtors have filed the 1st Amended Combined Plan of Liquidation of Offshore Spars Co. and Reorganization of Eric G. Graczyk (the "Plan") referred to in this Ballot. The Plan provides information to assist you in deciding how to vote your ballot. If you do not have a copy of the Plan, you may obtain a copy from Debtor's counsel Elliot G. Crowder, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 and ecrowder@sbplclaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims or equity interest in more than one class, identify each class, amount of claim and acceptance or rejection separately. If you require additional ballots, you may obtain them from Debtor's counsel.

If your ballot is not received by Elliot Crowder, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 on or before December 18, 2023 and unless such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.

---

[1]    The Debtors in these jointly administered cases are Offshore Spars Co. (Case No. 23-44657) and Eric G. Graczyk (Case No. 23-44658).

To have your vote count, you must complete and return this ballot to:

Elliot G. Crowder
Stevenson & Bullock P.L.C.
26100 American Drive, Suite 500
Southfield, Michigan 48034

NAME OF CREDITOR        _____

TYPE OF CLAIM (Check one)

| | |
|---|---|
| CLASS I | |
| CLASS V | |
| CLASS VI | |
| CLASS VII | |
| CLASS VIII | |

AMOUNT OF CLAIM       $_____

MARK ONE ONLY:       Accepts Plan      _____

                              Rejects Plan      _____

SIGNATURE:      _____

NAME:      _____

TITLE:      _____

ADDRESS:      _____
                 _____
                 _____

DATE:      _____